# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

DEBRA J. THOMPSON, an individual
on behalf of herself and on behalf of all
other similarly situated persons,

        Plaintiff,

    vs.

ALLIANZ LIFE INSURANCE
COMPANY OF NORTH AMERICA, a
Minnesota corporation

        Defendant.

Case No.:


**CLASS ACTION COMPLAINT**
**Jury Trial Demanded**

---

Plaintiff Debra J. Thompson, by and through her attorneys, files this complaint on behalf of herself and all others similarly situated against Defendant Allianz Life Insurance Company of North America ("Allianz"), and hereby alleges, upon information and belief, except as to those matters on which she has personal knowledge, as follows:

## NATURE OF THE ACTION

1. Allianz is a leader in the sales of deferred annuities, collecting more than $100 billion in premiums over the past 15 years. Allianz achieved its dominant position in the insurance industry by selling an array of single-tier and two-tier deferred annuity products. These annuity products include attractive features, such as hefty premium bonuses. Allianz generates sales of its annuity products by offering generous commissions and perks to its army of sales agents.

2. To recoup the costs associated with the product features and agent commissions, Allianz imposes upon the purchasing policyholder lengthy and substantial

surrender charges in its single-tier annuities, and even more severe forfeiture provisions in its two-tier annuities. These charges and provisions make the Allianz annuities extremely illiquid and, if certain conditions are not met, policyholders lose substantial portions of their accumulation account values otherwise available under the annuities.

3.      In its standardized annuity contracts, however, Allianz promises policyholders that they will receive the full reported account value so long as they comply with specifically stated deferral and annuitization requirements before exercising an annuitization option (i.e., before taking monies from the account in periodic payments over time).[1]  Specifically, Allianz contractually agrees that if its single-tier policyholders comply with the minimum deferral and annuitization periods, they will have the option of receiving the full Accumulation Value prior to the expiration of any applicable surrender charge period. Likewise, Allianz contractually agrees that if its two-tiered policyholders comply with the minimum deferral and annuitization periods are satisfied, they will receive the full Annuitization Value and avoid the onerous forfeiture provisions.

4.      Moreover, in all of its deferred annuities Allianz furthermore agrees to pay death benefit beneficiaries the full Accumulation Value or full Annuitization Value if the beneficiary elects to receive periodic annuity payments over a minimum period of five years.

---

[1] The requirements are set forth in the standardized policy contract between Allianz and the policyholder. Most of Allianz's deferred annuities condition receipt of the full Accumulation or Annuitization Value on the policyholder holding the annuity without receiving payments for at least 5 years (i.e., the deferral period) and then receiving the payout in periodic payments over at least 10 years or for the life of the annuitant (i.e., the annuitization period).

5.     Allianz has systematically breached these contractual obligations, however. When the compliant policyholder or beneficiary exercises the foregoing options, Allianz imposes a charge referred to internally as an "expense recovery adjustment" or "haircut" (hereinafter referred to as the "Expense Recovery Adjustment"), effectively reducing the Accumulation or Annuitization Values paid even though the policyholders have satisfied with the minimum contractual deferral and annuitization requirements.

6.     Allianz applies the Expense Recovery Adjustment whenever (a) the policyholder elects to receive annuity payments within the first 10 years after the contract was issued or (b) the policyholder dies within that same time period and his or her beneficiary elects to receive death benefits over a five-year period.  For example, if a policyholder holds the deferred annuity in deferral for five years and then elects to annuitize the annuity over a period of ten years (thereby complying with the minimum contractual deferral and annuitization periods), Allianz applies an Expense Recovery Adjustment reducing the Accumulation or Annuitization Value by 6%, thereby reducing the periodic payments to the annuitant.

7.     The one-tier and two-tier Alliance annuities do not authorize Allianz to reduce the payout to the compliant policyholder.  In fact, Allianz's form contract does not even mention the existence of the Expense Recovery Adjustment, the applicable reduction schedule or how the adjustment operates to reduce the annuity payments ultimately received by the annuitant.

8.     Plaintiff in this putative class action asserts that Allianz breached the express terms of its policies by applying the unauthorized Expense Recovery Adjustment

to reduce the payments due to policyholders and beneficiaries who complied with the minimum contractual deferral and annuitization requirements and, alternatively, that Allianz's imposition of the Expense Recovery Adjustment upon the compliant policyholder or beneficiary contravened their reasonable expectations because the pertinent provisions of the Allianz annuity contracts are at least ambiguous and must be construed against Allianz.

9.    Plaintiff further asserts that Allianz violated its contractual obligations of good faith and fair dealing by imposing the Expense Recovery Adjustment when the compliant policyholders and beneficiaries exercised their option to receive the full Accumulation Value or full Annuitization Value. In so doing, Allianz unjustifiably deprived Plaintiff and Class Members of all the benefits expected and promised under the policies.

10.    Plaintiff seeks damages on her on behalf, and on behalf of the other members of the putative class, proximately caused by Allianz's actions.

## THE PARTIES

11.    Plaintiff Debra J. Thompson (hereinafter "Plaintiff" or "Ms. Thompson") resides in Orange County in the State of California.  Ms. Thompson was designated as the beneficiary in an Allianz MasterDex 10 annuity contract issued to her mother, Florence Warburg, on December 19, 2006.  Ms. Warburg passed away on March 8, 2015.

12.    Defendant Allianz is, and at all relevant times herein was, a privately held stock insurance corporation.  Founded in 1959, Allianz is organized and exists under the laws of the State of Minnesota and is authorized to transact and, in fact, does transact

business in insurance in this State and within this judicial district.  Allianz maintains its executive offices at 5701 Golden Hills Drive, Minneapolis, Minnesota, 55416.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the parties to this action.  The named Plaintiff is the beneficiary under a deferred annuity issued by Allianz from its home offices in Minnesota.

14.    Allianz is a Minnesota corporation that maintains its home offices within Minnesota and conducts substantial business within Minnesota. Allianz currently maintains systematic and continuous business contacts with Minnesota.

15.    Venue is proper in this District under 28 U.S.C. § 1391 because Allianz engaged in business in this District; thousands of Class Members either reside or did business with Allianz in this District; a substantial part of the events giving rise to the claims at issue occurred in this District; and because Allianz entered transactions with and received substantial profits from policyholders who reside in this District.

16.    The Court has subject matter jurisdiction based on diversity of citizenship. Additionally, because this Complaint alleges claims on behalf of a national class of policyholders who are minimally diverse from Allianz, and because the aggregate of these claims exceed $5,000,000, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  Supplemental jurisdiction over Plaintiff's state law claims is proper under 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

### A.    Background on Allianz's Deferred Annuities

17.    With a deferred annuity, the owner pays an upfront premium, which is credited to the annuity's account value, and foregoes receiving payment of the policy proceeds until some point in the future. During this deferral period, the earnings on the premium payments grow, tax-deferred. Deferred annuities are long-term investment products that effectively lock up the purchaser's money for lengthy periods, typically up to 10 years or more.

18.    Allianz developed and sold so-called "single-tier" and "two-tier" deferred annuities.

19.    Allianz's single-tier annuities have two reported account values: the Accumulation Value and the Cash Surrender Value. Allianz's standardized policy forms specify how the Accumulation Value and Cash Surrender Value are calculated. The Accumulation Value equals: (i) the sum of (a) the premiums paid, (b) the premium bonus and (c) any applicable interest or index benefit credits applicable, (ii) minus any withdrawals. The Cash Surrender Value equals the Accumulation Value reduced by any applicable surrender charges. Allianz's single-tier annuities typically have surrender charge periods lasting 10-12 years with surrender charges as high as 15%. The surrender charge decreases over time.

20.    Allianz's two-tier annuities also have two reported account values: the (upper tier) Annuitization Value and the (lower tier) Cash Value. Allianz's standardized policy forms specify how the Annuitization Value and the Cash Value are calculated.

The Annuitization Value equals: (i) the sum of (a) the premiums paid, (b) the premium bonus and (c) any applicable interest index benefit credits (ii) minus any withdrawals. The Cash Value equals the greater of: (i) 75% of the first-year premium plus 87.5% of all subsequently submitted premium less any withdrawals, all accumulated at 3% interest compounded annually (Guaranteed Minimum Value); or (ii) 87.5% of all premiums less any withdrawals, all accumulated at 1.5% interest compounded annually. The difference between the upper tier Annuitization Value and the lower tier Cash Value is permanent and grows over time.

21.     Because of the lengthy surrender charge period associated with most of its single-tier annuities and the perpetual forfeiture provisions associated with its two-tier annuities, Allianz's deferred annuities are highly illiquid. Policyholders stand to lose substantial account values if they surrender their annuities or if they elect to withdraw funds exceeding specified penalty free withdrawals. As shown below, however, Allianz promises that policyholders will nevertheless receive the full Accumulation Value or the full Annuitization Value if they comply with certain specified rules.

### B.    Allianz's Standardized Policy Terms

22.     Under its standardized single-tier annuity policies, Allianz promises that policyholders will receive the full Accumulation Value prior to the expiration of the surrender charge period if policyholders meet certain minimum deferral and annuitization periods. The Allianz standardized single-tier annuity contracts typically provide:

> The Accumulation Value will be used to calculate the annuity payments if this policy has been in Deferral for at least:

(a)    Five Policy Years and annuity payments are paid in an Annuity Option which extends over a period of at least ten years for Annuity Options A and E, or over the life of the annuitant for Annuity Options B, C, F, and G . . .

23.    Under its standardized two-tier annuity policy forms, Allianz promises that policyholders will receive the full Annuitization Value if they comply with the specified deferral and annuitization periods. Specifically, the relevant policy language states:

The Annuitization Value is the amount used to calculate annuity payments if this policy has been in Deferral for at least five Policy Years and an Annuity Option which extends over a period of at least ten years or over the life of the Annuitant is paid.

24.    Allianz's single-tier and two-tier annuities also purportedly allow beneficiaries to receive the full Accumulation or Annuitization Value as the death benefit if paid out over a minimum of five years. For example, the MasterDex 10 policy describes this death benefit option as follows:

If the Beneficiary receives the Death Benefit as an Annuity Option over at least a five year period, the Annuitization Value is used to calculate the annuity payments.

25.    Moreover, in all its deferred annuities Allianz agrees to pay death benefit beneficiaries the full Accumulation Value or full Annuitization Value if the beneficiary elects to receive periodic annuity payments over a minimum period of five years.

**C.    Allianz Breaches the Terms of the Annuity Contracts by Imposing the Expense Recovery Adjustment on Compliant Policyholders and Beneficiaries.**

26.    As alleged above, the Allianz annuities promise policyholders and beneficiaries that they will receive the full Accumulation or Annuitization Values and avoid the hefty surrender charges and forfeiture provisions if they annuitize their deferred

annuity in accordance with the specified minimum deferral and annuitization periods. Despite this promise, Allianz uniformly and systematically reduces the Accumulation or Annuitization Value whenever a policyholder elects to annuitize the policy within the first 10 years after the date of issuance, even if the policyholder complies with the minimum deferral period (of 5 years) and the minimum annuitization period (of 10 years or the life of the annuitant). Allianz does so by applying the Expense Recovery Adjustment even though the policyholder has complied with the contractual requirements to be paid the full Accumulation or Annuitization Value. This Expense Recovery Adjustment – also referred to colloquially as the "haircut" – applies a specified percentage reduction based on a schedule dependent on the year in which the policyholder elects to annuitize.[2]

27. Allianz applies the Expense Recovery Adjustment to reduce the Accumulation or Annuitization Value using the following schedule:

---

[2] Application of the Expense Recovery Adjustment is also dependent on the payout interest rate exceeding the minimum guaranteed payout interest rate (typically only 1%) specified in the policy contract. Upon information and belief, the payout interest rates declared by Allianz during the Class Period exceeded the modest minimum payout rates guaranteed under the annuity contracts.

| Contract Year of Annuitization | Reduction Percentage |
|---|---|
| 1 | 10% |
| 2 | 10% |
| 3 | 9% |
| 4 | 8% |
| 5 | 7% |
| 6 | 6% |
| 7 | 5% |
| 8 | 4% |
| 9 | 3% |
| 10 | 2% |

Thus, if a policyholder elects to annuitize in contract-year six and to receive annuity payments for a period of ten years, Allianz applies the Expense Recovery Adjustment to reduce the Accumulation or Annuitization Value by 6%, thereby reducing the annuity payments.

28.    Allianz has thus systemically breached the express terms of its annuity contracts by imposing the Expense Recovery Adjustment to reduce the Accumulation and Annuitization Values in calculating the periodic annuity payments due to policyholders who have complied with the minimum contractual deferral and minimum annuitization periods. Thousands of Allianz policyholders have elected to annuitize in contract policy years six through ten with annuitization periods for 10 years or more, or for life, and have

therefore suffered a reduction of their Accumulation or Annuitization Values as a direct and proximate result of the Expense Recovery Adjustment.

29.     Allianz likewise applies the Expense Recovery Adjustment to death claims made under its single-tier and two-tier annuities. Upon the death of the policyholder, the Allianz annuities provide that the designated beneficiary will receive the full Accumulation or Annuitization Value if they elect to receive the payout of the death benefit over a period of at least five years. However, in violation of the express terms of its annuities, when this option is selected in compliance with the contractual requirements Allianz applies the Expense Recovery Adjustment, reducing the Accumulation or Annuitization Value whenever the death claim is submitted during the first 10 years after the annuity was issued. Accordingly, for example, if the policyholder's death occurs during the fourth contract-year and the beneficiary elects the five-year annuitization option, Allianz will apply an 8% reduction to the Accumulation or Annuitization Value.

30.     Allianz applied the Expense Recovery Adjustment in the same manner to calculate annuity payments for both its single-tier and two-tier annuity contracts, including death benefit claims made under those contracts.

31.     The reduction in the Accumulation or Annuitization Value caused by application of the Expense Recovery Adjustment applies over the entire term of the payout period selected. This permanent reduction in the payout of the Accumulation or Annuitization Value resulted in substantial damages to compliant policyholders and beneficiaries like Plaintiff and the other Class Members.

32.     Allianz's contractual breaches are uniformly and systematically carried out on a company-wide basis and are representative of the experiences of Plaintiff and all policyholders and beneficiaries throughout the United States during the Class Period.

33.     By its conduct, Allianz thereby has recouped its own costs to perform the annuity contract at the expense of its compliant policyholders and beneficiaries. Because Plaintiff and Class Members complied with all the standardized contract terms, Allianz uniformly breached its deferred annuity contracts with Plaintiff and Class Members by failing to pay them the full Accumulation or Annuitization Value upon annuitization as stated in the policy contract.

**D.     Allianz's Application of the Expense Recovery Adjustment Contravenes the Reasonable Expectations of the Policyholders and Beneficiaries.**

34.     In the alternative, the Allianz deferred annuity contracts promising full Accumulation or Annuitization Values for complying policyholders and beneficiaries are at a minimum ambiguous.  The Expense Recovery Adjustment is not mentioned, let alone authorized, anywhere in the standardized Allianz annuity contracts.   Nor do the standardized Allianz annuity contracts reference the applicable reduction schedule or how the adjustment operates to reduce the annuity payments potentially received by the policyholder. The Expense Recovery Adjustment is instead a hidden charge, resulting in a forfeiture of account values that is wholly unexpected by the Allianz policyholders, many of whom are elderly.   The Expense Recovery Adjustment thus operates like a hidden coverage exclusion.

35.     Furthermore, as explained below, far from providing that Allianz will reduce the annuity payments to those policyholders or beneficiaries who comply with the minimum deferral and payout requirements, the contract provisions actually addressing the promised annuitization benefits suggest that no such reduction will apply.

36.     Under these circumstances, any provision that Allianz invokes as contractual authority to impose the Expense Recovery Adjustment is at a minimum ambiguous. Consequently, such ambiguous contract terms must be construed (a) against Allianz, who drafted them, and (b) consistent with the objective expectations of a reasonable policyholder or beneficiary.

37.     For example, the Allianz in the standardized annuity contracts agrees that, if the policyholder defers annuitization for at least five years and then elects an annuity option that extends over a period of at least 10 years or the life of the annuitant, Allianz will pay out the full Accumulation Value or Annuitization Value.  Elsewhere, the annuity contracts also provide that the annuity payments will be based on interest rates "we declare" but will never be less than the purchase rates in the Purchase Rate Tables set forth in a different section of the annuity contract. The annuities define neither the "purchase rates" that will be applied at the time of annuitization nor how Allianz determines the "purchase rates we declare."

38.     Although Allianz applies the Expense Recovery Adjustment to reduce the Accumulation and Account Values used to determine the applicable annuity payments, Allianz may argue that the adjustment is being made to the "purchase rates" and not to the Accumulation or Annuitization Values. In other words, Allianz  may argue that it is

using the Expense Recovery Adjustment to determine "the purchase rates we declare," and that it is simply "declaring" different annuitization purchase rates for policyholders or beneficiaries.

39.    The Purchase Rate Tables, which list the minimum annuitization payments payable by Allianz, "are based on 1% interest and the Annuity 2000 Mortality Tables." The only factors determining the applicable monthly annuity payments set forth in the Purchase Rate Tables based on the stated 1% minimum interest rate are: (i) the number of years over which payments will be made under the "Payments Certain" option; or (ii) the age (and related life expectancy) and gender of the annuitant and the applicable number of years certain for payments under the "Life and Minimum Guaranteed Term" option. The age, gender and duration of the annuity payments are the only factors listed in the Purchase Rate Tables for a reason: under prevailing actuarial principles, those are the only risk factors relevant in determining the amount of monthly annuity payments resulting from application of the prevailing interest rate declared on the date of annuitization.

40.    Under Allianz's theory, however, the payout to similarly situated policyholder or beneficiary would vary based solely on the arbitrary Expense Recovery Adjustment schedule. For example, if the Expense Recovery Adjustment were applied to determine "purchase rates," a 75-year-old male policyholder who annuitizes in the 6th contract year would receive annuity payments substantially lower than a 75-year-old policyholder who annuitizes the very same date under an annuity in the 11th contract year. No reasonable policyholder or beneficiary would, however, know or understand that the

applicable provisions of the annuity contracts operate in this manner or permit such an unfair and illogical result.

41.    Specifically, a reasonable policyholder would instead construe the standardized policy language to mean that the purchase rate applied upon annuitization, like those listed in the Purchase Rate Tables, consists of two components: (i) an interest rate; and (ii) the duration of payments based on a period certain or the life expectancy of the annuitant based on the age and sex of the annuitant. A reasonable policyholder would construe the standardized policy language to mean that when setting the purchase rate associated with annuitization, Allianz would only consider these two components. A reasonable policyholder also would understand that the interest rate component would be based on the interest rate conditions prevailing on the date of annuitization.

42.    In other words, a fully informed policyholder would reasonably conclude that annuitants of the same age and sex annuitizing on the exact same date will receive monthly payments based on the same interest rate. This interpretation is not only reasonable from the perspective of an ordinary policyholder, it is also consistent with generally recognized actuarial principles[3] and governing insurance regulations[4], which

---

[3] Classification of insured parties or annuitants is allowed only at policy issuance. For example, life insurance is underwritten and rated when a policy is issued. Annuities are likewise rated or classified at the issuance of the contract. Using the number of years after policy issuance as a rating classification improperly discriminates against annuitants who have an equal probability of death at the time of annuitization.

[4] Minnesota's anti-discrimination statute prohibits "[m]aking or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of annuity or in the dividends or other benefits payable thereon …." Minn. Stat. Ann. § 72A.20 (West).

provide that individuals of the same age and gender are within the same risk class and therefore are entitled to receive the same annuity benefits as others within that class.

43.    The foregoing forecloses any contention that Allianz is entitled to determine the "purchase rates" for two similarly situated policyholders annuitizing on the same date using different interest rates. The Expense Recovery Adjustment cannot be applied to generate different annuity payouts to policyholders or beneficiaries of the same age and gender who annuitize on the same day, for the differential would not be based on age and gender, but rather solely from the number of years the respective annuities were in force.

44.    Indeed, no reasonable policyholder would know, understand or believe that Allianz would or could reduce **either** the Accumulation or Annuitization Values **or** the applicable "purchase rates" (which has the same effect as a reduction in the Accumulation or Account Values) where the policyholder has complied with the stated minimum deferral and annuitization periods.  Nor would a reasonable policyholder understand that the annuity policy documents permit such an unfair result because, among other things: (i) the annuity contract does not mention (let alone authorize) the Expense Recovery Adjustment; (ii) the contract language provides that the annuity payments will be based on the full Accumulation and Annuitization Values if the minimum deferral and minimum annuitization requirements are satisfied; (iii) the annuities do not define the applicable "purchase rates" or how those rates will be determined, other than with reference to the Purchase Rate Tables listing minimum monthly annuity payments; (iv) consistent with established actuarial principles and

regulatory requirements, the Purchase Rate Tables themselves indicate that the only factors determining the amount of the monthly annuity payments are the age and gender of the annuitant and the annuity option selected (and particularly not the duration of the contract at the time of annuitization); (v) doing so would violate the Minnesota non-discrimination statute; and (vi) common sense would dictate that two annuitants who are the same age and sex who annuitize on the same day will receive payments based on the same applicable interest rate.

45.    In sum, Allianz's standardized annuity contract cannot be construed to allow Allianz to evade its express obligation to pay the full Accumulation and Annuitization Values upon policyholder or beneficiary compliance with the requisite deferral and annuitization periods, only to have their payout reduced through Allianz's assessment of an unauthorized cost-recoupment charge mentioned nowhere in the standardized policy contract.

### E.    Allianz Acted in Bad Faith to Deprive Policyholders and Beneficiaries of the Promised Benefits of their Annuity Contract.

46.    By adopting and implementing the unauthorized Expense Recovery Adjustment, Allianz has acted in its own self-interest and contrary to the interest of its policyholders and beneficiaries – many of whom are vulnerable and elderly. As alleged below, Allianz imposes the Expense Recovery Adjustment for an ulterior purpose (to shift its own costs of performance) to deprive the policyholders and beneficiaries of the fruits of the annuity contracts (payments based on the full account values) and, in doing

so, Allianz has acted dishonestly (by imposing the Expense Recovery Adjustment without explanation and without any contractual authority to do so).

47.    The Allianz deferred annuity products have features, including bonuses, high commissions and other benefits, that made them easy to sell, but costly to perform. Allianz agreed that the policyholders or their beneficiaries would receive the full Accumulation or Annuitization Value should they annuitize the payout in accordance with the terms of the contract. However, Allianz later applied the Expense Recovery Adjustment to force the policyholders and death benefit beneficiaries to shoulder the cost of Allianz's own contractual obligations under the annuity contracts. By collecting this unauthorized and hidden charge, Allianz burdened its policyholders and beneficiaries themselves with the burden of paying for some or all of the very benefits it agreed to provide them, denying them the fruits of their contract.

48.    Although the Expense Recovery Adjustment is not referenced or explained anywhere in the Allianz annuity contracts, when pressed to defend it Allianz maintains that the hidden charge is applied to offset Allianz's "costs"  associated with having to maintain investments in interest-sensitive assets with "shorter" durations to cover the liabilities associated with annuitization requests made by compliant policyholders or beneficiaries during the Expense Recovery Adjustment period (so-called "distermediation risk"). As shown below, the professed justification is purely pretextual, and designed to mask Allianz's ulterior purpose of shifting to unwitting policyholders and beneficiaries Allianz's own costs associated with high agent commissions.

49.     First, Allianz suffers no increased costs associated with annuitizations occurring in contract years 6-10, because the company manages its distermediation risk through sophisticated asset liability management ("ALM") practices including hedges, derivative trades and other ALM procedures.

50.     Second, Allianz does not segregate assets to cover the liabilities associated within any particular group of annuity contracts.  There is no legitimate basis for Allianz to argue that there is any enhanced risk or cost associated with annuitizations occurring during contract years 6-10 as opposed to annuitizations occurring in later durations.

51.     Third, the fact that Allianz has applied the same Expense Recovery Adjustment schedule of percentages for the last 20 years or more precludes any suggestion that the adjustment is based upon disintermediation costs or risks associated with changing interest rate environments.

52.     To the contrary, Allianz applies the Expense Recovery Adjustment between contract years 6-10, at the same time that its contracts promise policyholders that they will receive the full Accumulation or Account values if they annuitize after the fifth contract year, precisely because Allianz knows that the stated minimum deferral and annuitization periods will encourage policyholders to annuitize in the sixth contract year (immediately after the minimum deferral period is satisfied) and the following few years. In other words, Allianz maximizes the offset to its performance obligations by applying the Expense Recovery Adjustment when the highest level of annuitizations are likely to occur.

53.     It is the utmost bad faith for Allianz to include an express provision in its annuity contracts promising to pay the full Accumulation or Annuitization Values if the policyholder waits five years before annuitizing – knowing and expecting that this provision will cause policyholders to annuitize upon expiration of the minimum holding period has expired – only to apply the Expense Recovery Adjustment to effectively reduce the Accumulation and Annuitization Values and reduce the monthly annuity payments ultimately received by the annuitants or their beneficiaries. As applied, the Expense Recovery Adjustment operates to wrongfully and unjustly deprive policyholders of the full benefits of their annuity contracts.

54.     In addition to its ulterior motives and bad faith, Allianz has imposed the Expense Recovery Adjustment dishonestly. The Allianz annuity contracts expressly provides that policyholders and beneficiaries will receive the full Accumulation or Annuitization Values if they comply with the minimum deferral and annuitization periods, but contain no contractual provisions indicating the Expense Recovery Adjustment will be applied to reduce those values at the time of annuitization. Allianz does not explain the Expense Recovery Adjustment to policyholders or beneficiaries at the time of or after annuitization has occurred.

55.     Allianz's dishonest application of the Expense Recovery Adjustment deprives policyholders and beneficiaries of the ability to make fully informed decisions about the timing and terms of annuitization and deprives them of bargained-for policy benefits.  Without knowing about the existence and operation of the Expense Recovery Adjustment, policyholders and beneficiaries are lulled into annuitizing in years 6-10

unaware that they will receive substantially higher annuity payments if they were to postpone annuitization to a future date.

56.    Allianz's ulterior motives and bad faith in exacting the Expense Recovery Adjustment are also contrary to antidiscrimination statutes adopted in Minnesota and in several other states. As alleged above, as a result of the Expense Recovery Adjustment, two individuals of the same gender and age who purchased annuity on the same day, but who annuitize in year six and seven, respectively, will not receive the same expected benefits.  The application of the Expense Recovery Adjustment to discriminate against individuals in the same risk class is not based on any actuarial principle or experience study, but rather is done for sole purpose of Allianz's desire to recoup the costs of benefits it agreed to pay from those to whom it agreed to pay them.

**F.    Plaintiff's Annuity Transaction**

57.    On December 19, 2006, Florence Warburg purchased a MasterDex 10 deferred annuity issued by Allianz with Contract Number 70518298.  Ms. Warburg paid a premium of $150,267.59 for the MasterDex 10 annuity.  At the time the policy was issued, Ms. Warburg named Lawrence Warburg as the primary beneficiary under the policy.

58.    On December 29, 2006, Ms. Warburg named Debra Thompson and Joel Warburg as contingent beneficiaries under her MasterDex 10 policy.  On November 25, 2009, Ms. Warburg named Debra Thompson and Joel Warburg as the primary beneficiaries under her MasterDex 10 annuity.  In February 2015, Ms. Warburg changed

the beneficiaries to name Debra Thompson as the primary beneficiary and Joel Warburg as the contingent beneficiary under her MasterDex 10 annuity.

59.     Ms. Warburg passed away on March 8, 2015.  At the time of Ms. Warburg's death, her MasterDex 10 policy was in the ninth policy year.  As the primary beneficiary under Ms. Warburg's MasterDex 10 policy, Plaintiff elected to receive the Annuitization Value annuitized over a period of five years, using the Annuitization Value to calculate the payout.  Upon making this election, Allianz applied its Expense Recovery Adjustment to reduce the Annuitization Value by 3%, resulting in lower payout to Plaintiff.

### G.     Minnesota Has an Interest in Policing Its Domestic Insurance Corporations.

60.     Allianz's maintains its executive offices and principle place of business in Minneapolis, Minnesota. Allianz refers internally to its business offices and operations in Minneapolis as the "Home Office."

61.     All of Allianz's uniform and standardized contract language was developed at Allianz's Home Office in Minneapolis.

62.     The deferred annuity contracts issued to Class Members list the address of Allianz's Home Office in Minnesota.

63.     All deferred annuity policies are issued and administered by Allianz's Home Office in Minneapolis.

64.     All premium payments payable to Allianz from Class Members were mailed or otherwise delivered to Allianz's Home Office in Minneapolis.

65.     All sales materials and correspondence list the address and telephone number of Allianz's Home Office.  Class Members were directed to call Allianz's customer service center in Minnesota with questions or concerns about their policies.

66.     Because their deferred annuities were issued by Allianz's Home Office, premiums were paid to Allianz's Home Office, and the sales materials and correspondence sent to Class Members listed the Home Office address and telephone number, all Class Members could have reasonably predicted application of Minnesota law to their claims.

67.     Because of the significant contacts between Minnesota and the claims being litigated based on as described in the preceding paragraphs, application of Minnesota law would not manifestly disrespect the sovereignty of any other state.

68.     Minnesota also has an interest in preventing domestic corporations from using Minnesota as a shield to engage in unfair and improper business practices. Indeed, the Minnesota Department of Commerce is the domiciliary regulator for Allianz with primary responsibility for overseeing the company's solvency, capital adequacy, financial reporting and market conduct. Furthermore, the Minnesota Attorney General has, from time to time, brought civil enforcement proceedings against Allianz, thereby highlighting Minnesota's overarching public interest in preventing Allianz from engaging in unlawful conduct.

## CLASS ACTION ALLEGATIONS

69.    Plaintiff brings this action on behalf of herself and on behalf of the subclasses described below (the "Class") pursuant to Rule 23(a) and (b)(3), of the *Federal Rules of Civil Procedure*.

70.    Plaintiff seeks certification of the following Class:

> All persons who (a) hold one or more deferred annuity contracts issued by Allianz Life Insurance Company of North America, or are beneficiaries under such annuity contracts, and (b) elected to annuitize their deferred annuity or their death benefit and (c) had the Accumulation or Annuitization Values reduced by an Expense Recovery Adjustment.

Excluded from the Class are (1) Allianz, any parent, subsidiary or affiliate of Allianz, any entity in which Allianz has controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities; (2) Plaintiff's counsel; (3) any judge, justice or judicial official presiding over this litigation and the staff and immediate family of any such judge, justice or judicial official; (3) annuity contracts sold in New York; and (4) the named plaintiff and class members in any class or subclass certified in *Sanchez v. Allianz Life Ins. Co. of N. Am.*, Case No. BC594715 pending in the Superior Court for the County of Los Angeles.

71.    Membership in the Class is so numerous as to make it impractical to bring all Class Members before the Court.  The exact number of Class Members is unknown, but can be determined from the records maintained by Allianz.  Therefore, class notice easily can be mailed to all Class Members in the event the class is certified by this Court. Plaintiff believes there are thousands of persons in the Class.

72.     The claims asserted by Plaintiff on behalf of herself and the Class Members involve common questions of fact and law.

73.     The named Plaintiff is typical of the Members of the Class.  She elected to receive the Annuitization Value and complied with the deferral and annuitization requirements.  In addition, like all other Class Members, at the time of annuitization, Allianz reduced the Plaintiff's Annuitization Value through application of the Expense Recovery Adjustment.

74.     Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity.  Plaintiff has no interests adverse to the interests of other Members of the Class, and will fairly and adequately protect the interests of the Class.

75.     The self-interest of Plaintiff is co-extensive with and not antagonistic to those of absent Class Members.  Plaintiff will undertake to represent and protect the interest of absent Class Members.

76.     Plaintiff has retained counsel who are experienced and competent in the prosecution of class actions and complex litigation, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent Plaintiff and the putative Class Members.

77.     Common questions of law and fact predominate over any individualized questions.  Common legal and factual questions include the following:

      a.     Whether Allianz breached the express terms of its annuity contracts with Plaintiff and Class Members by failing to pay the full Accumulation or

Annuitization Value of their annuity through application of the Expense Recovery Adjustment;

b.      Whether Allianz breached the implied terms of it annuity contracts by failing to pay the full Accumulation or Annuitization Value of their annuity through application of the Expense Recovery Adjustment; and

c.      Whether Plaintiff and Class Members have sustained damages because of Allianz's failure to fulfill its contractual obligations and, if so, what is the proper measure of damages.

78.     Maintenance of this action as a class action is manageable.  For example, there is no need for manual computation of any damages because the amount of damages awardable to Plaintiff and Class Members can easily be determined from the computer records and the computer data possessed by Allianz.

79.     Further, a class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that: (a) individual claims by Plaintiff and Class Members are impractical as the costs of pursuit far exceed what Plaintiff or any Class Member has at stake; (b) as a result, although some class actions have been filed, there has been very little individual litigation over the controversies herein, and individual Class Members have no interest in prosecuting and controlling separate actions; (c) it is desirable to concentrate litigation of the claims herein in this forum; and (d) the proposed class action is manageable.

80.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal

individual determinations. The prosecution of separate actions by individual Class Members, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual Class Members against Allianz and would establish impractical standards of conduct for it.

## COUNT I
## BREACH OF CONTRACT
### (Individually and on behalf of the Class)

81.    Plaintiff re-alleges the allegations contained in the previous paragraphs as if fully set forth herein.

82.    Plaintiff and the Class have complied with all conditions precedent for recovering the full Accumulation or Annuitization Value under the standardized terms of Allianz's deferred annuity contracts.

83.    For Plaintiff and each Class Member, by making annuity payments on the deferred annuity, Allianz has acknowledged that Plaintiff and Class Members are entitled to annuitize as set forth in the policy contract.

84.    Allianz nevertheless breached the provisions of its deferred annuity contracts with Plaintiff and the Class Members by applying the Expense Recovery Adjustment to reduce their Accumulation or Annuitization Value.

85.    Because of Allianz's failure to fulfill its contract obligations, Plaintiff and Class Members have been damaged by application of the Expense Recovery Adjustment in an amount to be determined at trial, including their receipt of lower annuity payments than contractually required.

## COUNT II
## BREACH OF IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING
### (Individually and on behalf of the Class)

86.     Plaintiff refers to the prior paragraphs of this Complaint and incorporates those paragraphs as though set forth in full in this cause of action.

87.     The annuity contracts are valid, enforceable contracts between Allianz and Plaintiff and the other Class Members.

88.     Under the annuity contracts Allianz owes Plaintiff and Class Members an implied covenant of good faith and fair dealing. Among other things, Allianz must refrain from doing anything to injure policyholders' right to receive the benefits of the annuity contracts.

89.     As alleged above, Allianz has breached these implied duties in connection with its application of the Expense Recovery Adjustment, depriving Plaintiff and the Class Members of benefits due to them under the Policies.

90.     Allianz's breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiff and Class Members in an amount to be determined at trial, including their receipt of lower annuity payments than contractually required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief against Allianz as follows:

A.     an Order certifying this action to proceed on behalf of the Class, and appointing Plaintiff and the counsel listed below to represent the Class;

B.      an Order awarding Plaintiff and Class Members damages in the amount their ultimate annuitization payout was reduced by Allianz's application of the Expense Recovery Adjustment, together with pre-judgment interest from the date of annuitization until date of judgment;

C.      an Order awarding Plaintiff and Class Members post-judgment interest as provided by law;

D.      an Order awarding Plaintiff and Class Members costs of suit and attorneys' fees; and

E.      an Order awarding Plaintiff and Class Members such other relief as may be just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: <u>January 10, 2017</u>                **HELLMUTH & JOHNSON, PLLC**


<u>s/ Anne T. Regan</u>
Anne T. Regan (MN ID # 0333852)
8050 West 78th Street
Edina, MN 55439
952-941-4005
aregan@hjlawfirm.com

**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
Andrew S. Friedman (*pro hac vice* pending)
2325 East Camelback Road, Suite 300
Phoeniz, AZ 85016
Tel: 602-274-1100
Fax: 602-274-1199
afriedman@bffb.com

**EVANS LAW FIRM, INC.**
Ingrid M. Evans (*pro hac vice* pending)
3053 Fillmore Street, #236
San Francisco, CA 94123
Tel: 415-441-8669
Fax: 888-891-4906
ingrid@evans.aw.com

*Attorneys for the Plaintiff and Putative Class*