## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Debra J. Thompson,
*an individual on behalf of herself and on
behalf of all other similarly situated persons*,

                       Plaintiffs,

v.

Allianz Life Insurance Company of North
America,

                       Defendant.

**Case No. 17-cv-96 (PAM/SER)**

**REPORT AND RECOMMENDATION**

---

       Andrew S. Friedman, Esq., Bonnett Fairbourn Friedman & Balint, Phoenix, Arizona, for Plaintiffs.

       Anne T. Regan, Esq., Hellmuth & Johnson, Edina, Minnesota, for Plaintiffs.

       Jeffrey D. Hedlund, Esq, Faegre Baker Daniels LLP, Minneapolis, Minnesota for Defendant.

       Stephen J. Jorden, Esq., Carlton Fields Jorden Burt PA, Hartford Connecticut, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

       This matter comes before the undersigned on Defendant Allianz Life Insurance Company of North America's ("Allianz") Motion to Dismiss [Doc. No. 18]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. *See* (Order Dated June 13, 2017) [Doc. No. 30]. For the reasons stated below, the Court recommends denying Allianz's Motion to Dismiss.

## I.      BACKGROUND

This case involves the question of whether a breach of contract claim related to a death benefit provision in an annuity contract is barred by *res judicata* on the basis of a prior litigation requesting recession of the annuity contract under a fraudulent inducement theory. This question is made more complicated due to the nature of the relationship between the parties and the nature of the interests at issue. In particular, the fraudulent inducement action involved the owner of the annuity contract as an absent class member and the breach of contract claim in the instant action involves the named beneficiary of the annuity contract. As a result, the Court must address whether the timing and nature of the interests that vested under the annuity contract confer privity between the parties and whether the fraudulent inducement claim involved the same factual circumstances as the breach of contract claim now asserted.

Plaintiff Debra Thompson ("Thompson") brings the breach of contract claim under an Allianz MasterDex 10 annuity (the "Policy"). *See generally* (Class Action Compl., "Compl.") [Doc. No. 1]; *see also* (Mem. of Law in Supp. of Def.'s Mot. to Dismiss, "Mem. in Supp.") [Doc. No. 20 at 3–4] (defining the nature of the Policy); (Compl. ¶¶ 20, 23, 25) (same); (Ex. 17, Attached to Decl. of Stephen J. Jorden in Supp. of Allianz's Mot. to Dismiss Compl., "Jorden Decl.") [Doc. No. 21-1 at 270–98] (the Policy and associated application).[1] The Policy was purchased by Thompson's mother, Florence Warburg ("Warbug"). (Compl. ¶¶ 11, 57). Warburg was also an absent class member in *Mooney v. Allianz Life Ins. Co.*, No. 06-cv-545 (ADM/FLN), which addressed the question of whether policy holders were fraudulently induced into purchasing these policies. *See, e.g.*, 2010 WL 419962 (D. Minn. Jan. 29, 2010) (Montgomery, J.) [hereinafter *Mooney III*]; 2009 WL 511572 (Feb. 26, 2009) (Montgomery, J.) [hereinafter *Mooney II*]; 2007 WL 128841 (Jan. 12, 2007) (Montgomery, J.) [hereinafter *Mooney I*]; *see also*

---

[1]     When referencing the exhibits attached to the Jorden Declaration, CM/ECF pagination is used.

(Exs. 1-15, Attached Jorden Decl. at 1–196) (various submissions and trial exhibits filed in *Mooney*); (Pl.'s Suppl. Mem. in Opp'n to Def.'s Mot. to Dismiss, "Suppl. Mem. in Opp'n") [Doc. No. 44 at 5] (stating "Warburg herself was not a party in *Mooney*, but merely an absent class member").[2]

In *Mooney*, the "Plaintiffs [sought] recovery on claims of consumer fraud in violation of the Minnesota Prevention of Consumer Fraud Act ('MPCFA'), Minn. Stat. §§ 325F.68–.70." *Mooney I*, 2007 WL 128841 at *1. The plaintiffs in *Mooney* alleged that they were fraudulently induced into purchasing the policies because bonuses that were marketed as immediate actually required multiple years to accrue. *Id.* at *3. *Mooney* "went to trial on September 22, 2009, and a jury returned a verdict on October 12, 2009," ultimately finding "that none of the class members were harmed as a direct result of the misrepresentation or deceptive practice." *Mooney III*, 2010 WL 419962 at *1 (internal quotation marks omitted).

Warburg purchased the Policy on December 19, 2006. (Compl. ¶¶ 11, 57). "Ms. Warburg [initially] named Lawrence Warburg as the primary beneficiary under the policy." (Compl. ¶¶ 11, 57); *see also* (Ex. 17 at 281–86) (application for the Policy). Thereafter, Warburg changed beneficiaries on the Policy at least three times, naming Thompson the lone primary beneficiary in February 2015. (*Id.* ¶ 58). Warburg "passed away on March 8, 2015." (*Id.* ¶¶ 11, 59). Thompson then "elected to receive the Annuitization Value annuitized over a period of five years, using the Annuitization Value to calculate the payout." (*Id.*). When Allianz allegedly "reduce[d] the Annuitization Value by 3%," Thompson brought the instant action alleging: (1) breach of contract under the Policy; and (2) breach of implied covenant of good faith and fair dealing. *See* (*id.* ¶¶ 59, 81–90).

---

[2]    When referencing Thompson's Supplemental Memorandum in Opposition, CM/ECF pagination is used.

Allianz brought its Motion to Dismiss arguing that *Mooney* and *res judicata* bar Thompson's breach of contract claims. *See generally* (Mem. in Supp.). Allianz asserts that

> Thompson's claims here, based on the same [expense recovery adjustment ("ERA")] calculation and the same contract, were litigated vigorously and to conclusion in *Mooney*. The court-approved *Mooney* class notice described alleged "reductions" caused by the ERA calculation as one of two theories of alleged wrongdoing on which the *Mooney* class's claims were based. And the ERA calculation was a primary focus of the Mooney litigation, including the argument and evidence at trial.

(*Id.* at 1–2). Allianz asserts the *res judicata* test in Minnesota that: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter" under *Hauschildt v. Beckingham,* 686 N.W.2d 829, 840 (Minn. 2004), "is easily satisfied here."[3] (Mem. in Supp. at 11) (citations omitted) (internal quotation marks omitted).

With respect to whether Thompson's instant case involves the same factual circumstances present in *Mooney*, Allianz states

> Thompson's claims are based on the same factual circumstances and the conduct that was a focal point of the *Mooney* class's claims: Allianz's alleged wrongful utilization of the ERA calculation. In fact, Thompson's claims not only rely on the same conduct litigated in *Mooney*, they also rely on the identical alleged promise and the same theory about why the promise was breached.

(*Id.* at 12).

With respect to privity, Allianz claims that "Thompson's status as a third-party beneficiary to Warburg's contract alone establishes privity." (*Id.* at 20). Alternatively, Allianz

---

[3] Because—as discussed below—the Court finds the earlier claim involved different factual circumstances and there is no privity between the parties, the Court does not discuss Allianz's arguments directed to the other prongs of the *res judicata* analysis. Although it is arguable that because Thompson lacked privity (and standing) to bring her breach of contract claim—which differed factually from the fraudulent inducement claim in *Mooney*—she did not have a full and fair opportunity to litigate her breach of contract claim in *Mooney*.

asserts there is privity between Thompson and Warburg because "Thompson as the primary beneficiary of her mother's MasterDex 10 policy 'follows' her mother 'in ownership or control' of that annuity." (*Id.*).

Thompson, not surprisingly, asserts that *Mooney* does not satisfy the *res judicata* prongs. *See generally* (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, "Mem. in Opp'n") [Doc. No. 28]. Specifically as it relates to whether the earlier claim involved the same factual circumstances, Thompson argues that different factual circumstances are involved because different evidence supports different claims and because the claims at issue in the instant action had not accrued at the time of the *Mooney* litigation; each assertion would prevent the satisfaction of the first prong of the *res judicata* analysis under Minnesota law. *See* (*id.* at 9–15).[4]

The Court heard oral argument on Allianz's Motion to Dismiss. *See* (Minute Entry Dated Sept. 11, 2017) [Doc. No. 38]. Supplemental briefing was requested regarding the question of whether the manner in which "Thompson's interests under the annuity at issue vested" impacted the privity determination of the *res judicata* analysis. *See* (Text Only Order Dated Sept. 12, 2017) [Doc. No. 39].

In its supplemental brief to the Court, Allianz asserts

Thompson was not just a successor-in-interest to, and third-party beneficiary of, Warburg's annuity contract (two firmly established categories of privity under Minnesota *res judicata* law); her rights and interests in challenging and seeking recovery for an alleged "reduction" in the annuity contract's annuitization value were fully pursued in *Mooney* based on the same promise, theory of breach, and injury.

(Suppl. Mem. of Law in Supp. of Def.'s Mot. to Dismiss, "Suppl. Mem. in Supp.") [Doc. No. 47 at 2]. Specifically, Allianz argues

---

[4]     Thompson did not specifically reference the privity prong of the *res judicata* analysis in its Memorandum in Opposition to the Motion to Dismiss. *See generally* (Mem. in Opp'n).

The general rule under life insurance and annuity contracts is that the beneficiary's rights vest when the insured or policy owner dies. *See McCloud v. Aetna Life Ins. Co.*, 21 N.W.2d 476, 478–79 (Minn. 1946). But the timing of the vesting of Thompson's right to Warburg's contract does not alter the privity analysis. Indeed, the concept of privity, when addressing *res judicata*, generally only applies when the party (here Thompson) acquires her interest or rights after, not before, commencement of the lawsuit.

(*Id.* at 9) (footnote omitted).

Thompson argues in her supplemental brief that

"There are three generally recognized categories of nonparties who will be bound by a prior adjudication: (1) a nonparty who controls the original action; (2) a nonparty whose interests are represented by a party to the original action; and (3) a successor-in-interest to a party." *Sondel v. Northwest Airlines, Inc.* 56 F.3d 934, 938 (8th Cir. 1995) (*citing Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 200 N.W.2d 45, 48 (Minn. 1972)); *Rucker v.Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011). None of these three circumstances applies here.

(Suppl. Mem. in Opp'n at 4).

With respect to whether Thompson could control the original action, she asserts a number of reasons why she did not, including that she "lack[ed] standing to pursue fraud-based class claims while the annuity owner is alive" because she had a "a non-vested expectancy interest." (*Id.*). With respect to whether Warburg could represent Thompson's contractual interests, Thompson asserts Warburg "could not represent Plaintiff Thompson's interests by pursuing a breach of contract action because, like Thompson, no contract claim of Warburg accrued during the pendency of *Mooney*." (*Id.* at 5). Furthermore, Thompson argues that because Warburg and Thompson were not in privity, they did not share the same legal rights and so Warburg could not have represented Thompson's interests in the *Mooney* litigation. *See* (*id.* at 6–7). Lastly, Thompson asserts that she is not a successor-in-interest to Warburg because she did not succeed to the ownership rights that Warburg had under the policy. *See* (*id.* at 9–10). In particular, Thompson asserts that her only right under the policy was to receive the death benefit and that

she had no right, e.g., "to assign transfer or change the ownership rights in the policy" or "the right to choose the Annuity Option for the Beneficiary." (*Id.* at 10).

The Court took the matter under advisement on September 22, 2017. *See* (Text Only Order Dated Sept. 12, 2017). Thus, the matter is fully briefed and ripe for consideration.

## II.    DISCUSSION

Because Allianz has failed to establish that *Mooney* and the instant action share the same factual occurrences or that Thompson was in privity with Warburg at the time of the *Mooney* decision, Allianz's *res judicata* arguments fail, and its Motion to Dismiss should be denied.

### A.    Legal Standard

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (internal quotation marks omitted).

### B.    Analysis[5]

The Court looks to "Minnesota law on the substantive question of *res judicata* because state law controls this issue in a diversity action." *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 822 (8th Cir. 2008). Under Minnesota law, a four-prong test controls whether *res judicata* bars Thompson's claims.

---

[5]    The Court references the Policy which was not attached to the Complaint, but was provided by Allianz attached to the Jorden Declaration. *See* (Ex. 17). Nevertheless, "the contract upon which a claim rests is necessarily embraced by the pleadings and may be considered" in connection with a motion to dismiss. *Dunnigan v. Fed. Home Loan Mortg. Co.*, 184 F.Supp. 3d 726, 734 (D. Minn. 2016) (Nelson, J.) (citing *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014)). As a result, the Court need not convert Allianz's Motion to Dismiss into one for summary judgment on this basis. *Id.*; *cf.* Fed. R. Civ. P. 12(d).

>*Res judicata* applies as an absolute bar to a subsequent claim when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter.

*Hauschildt*, 686 N.W.2d at 840; *see also Rabo Agrifinance, Inc. v. Wachovia Capital Fin. Corp.*, No. 10-cv-983 (JRT/JSM), 2011 WL 601157, at *2–4 (D. Minn. Feb. 11, 2011) (Tunheim, J.) (applying the four-factor test in *Hauschildt*). "All four prongs must be met for *res judicata* to apply." *Hauschildt*, 686 N.W.2d at 840. Furthermore, under Minnesota law, *res judicata* is "limited to a claim that existed at the time the first complaint was served." *Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 240 (Minn. 2007). Also, "[i]n Minnesota, contracts . . . are interpreted using general principles of contract interpretation." *Luxton v. State Farm Life Ins. Co.*, No. 00-cv-2246 (DSD/SRN), 2002 WL 254023 at *4 (D. Minn. Jan. 15, 2002) (Doty, J.) (applying Minnesota law). The Court finds Thompson's claims are premised on different factual circumstances than those asserted in the *Mooney* action and further finds that there is no privity between the parties under Minnesota law. Either ground by itself would compel a recommendation that Allianz's Motion to Dismiss be denied.

### 1.    Same Factual Circumstances

Under Minnesota law, whether actions involve the same factual circumstances is predicated on "whether the same evidence will sustain both actions. In addition, claims cannot be considered the same cause of action if the right to assert the second claim did not arise at the same time as the right to assert the first claim." *Hauschildt*, 686 N.W.2d at 840–41 (citations omitted). Here, the issues raised in *Mooney* involved different factual circumstances that necessarily rely on different evidence and the right to assert Thompson's breach of contract claim did not arise at the time of the *Mooney* action as is now described.

First, neither Thompson nor Warburg could have raised a breach of contract claim at the time of the *Mooney* decision, because under Minnesota law, "a cause of action for breach of contract accrues on the breach of the terms of the contract." *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989). At the time of the *Mooney* litigation, Warburg could never have alleged a breach under the language of the Policy for Allianz's failure to pay the full annuitization value, because Warburg had not satisfied the conditions precedent that gave rise to Allianz's obligations under the Policy to pay the full annuitization value. *See* (Ex. 17 at 288) ("The Annuitization Value is the amount used to calculate annuity payments if this policy has been in Deferral for at least five Policy Years and an Annuity Option which extends over a period of at least 10 years or over the life of the Annuitant is paid."). For example, at the time the first complaint in *Mooney* was filed, the Policy had been in deferral for a less than three years. *See* (Ex. 17 at 281–86) (Policy application dated December 19, 2006); (Compl. ¶ 58) (starting Warburg received the Policy on December 29, 2006); (Ex. 16 at 42) (Docket of the *Mooney* case, showing that original Complaint was filed on February 9, 2006).[6] Consequently, this suggests that *res judicata* does not apply. *See Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 447 (Minn. 2000) (finding *res judicata* inapplicable "because the county could not litigate the issue of whether [Care Institute, Inc.-Roseville] was a purely public charity in tax years 1996, 1997 or 1998 when the exemption for tax year 1994 was litigated in 1995–96"); *see also Drewitz*, 728 N.W.2d at 240 (stating *res judicata* is "limited to a claim that existed at the time the first complaint was served").

---

[6]      Further supporting this Court's analysis, at no time during the pendency of *Mooney* did Warburg's deferral period exceed the five-year threshold. *See Mooney III*, 2010 WL 419962, at *1 (stating that the jury rendered its verdict on October 12, 2009). Thus there is nothing to suggest that Warburg could have asserted a breach of contract claims at any point during the *Mooney* litigation, let alone at the time the first complaint was filed under *Drewitz*.

Second, as it relates to the MPCFA claims in *Mooney*, the plaintiffs in that action had the burden to "demonstrate that (1) the defendant made a false or misleading statement, (2) the false or misleading statement caused damage to the plaintiff, and (3) the plaintiff seeks to secure a public benefit." *Mooney II*, 2009 WL 511572, at *2 (citing *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 11, 13 (Minn. 2001)). Conversely, under general tenets of contract law, "for breach of contract, the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). In short, the evidence to support that Allianz made a false or misleading statement to induce purchase of the Policy and that Thompson (or Warburg) was damaged by the false or misleading statement is materially different than whether Thompson (or Warburg) performed the conditions precedent and that Allianz failed to abide by its obligations under the language of the Policy.

For these reasons, the Court concludes that *Mooney* and instant actions do not involve the same factual circumstances under a *res judicata* analysis.

## 2.    Same Parties or Their Privies

Minnesota courts have stated "privity has no per se definition and that privity determinations require[] a careful examination of the circumstance of each case." *Anderson v. City of St. Paul*, 849 F.3d 773, 778 (8th Cir. 2017) (internal quotation marks omitted) (alternations in original) (applying Minnesota law). One measure of privity is contractual privity. *See Cargill, Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341, 348–49 (Minn. 2010) (discussing notions of contractual privity). Under notions of contractual privity, "[t]he law is clear that no vested rights are created by simply naming a beneficiary: Where the owner of a . . . policy retains [the]

right to name new beneficiaries, a beneficiary retains only a contingent interest in the proceeds of a policy." *Lincoln Benefit Life Co. v. Heitz*, 468 F. Supp. 2d 1062, 1067 (D. Minn. 2007) (Frank, J.) (citing *Luxton*, 2002 WL 254023, at *6).

Here, the Policy was a revocable policy. *See* (Ex. 17 at 287) (stating that a beneficiary "is named in the application or as later changed with Notice"); (*id.* at 294) (stating that the Polcy owner "may change the named Beneficiary by providing Notice. The change will not be effective until it is recorded by us"); *see also* (Suppl. Mem. in Supp. at 9 n.2) ("Warburg's annuity contract permitted her to change her beneficiaries at any time, and she did so several times."). In other words, while Warburg retained the right to change the beneficiary, the assignment was revocable and such assignments did not create a vested right under the Policy. *See Stahel v. Prudential Ins. Co. of Am.*, 249 N.W. 713, 714 (Minn. 1933) (stating Minnesota follows the general rule that only irrevocable interests are vested ones). While Thompson's rights as a beneficiary ultimately did vest on March 8, 2015—when Warburg passed away—Thompson was not in privity with Warburg "at the time the [*Mooney*] complaint was served." *See Drewitz*, 728 N.W.2d at 240; *see also* (Compl. ¶ 59). As such, privity cannot be established vis-à-vis the nature of assignment of rights under the Policy. *See Lincoln Benefit Life Co.*, 468 F. Supp. 2d at 1067 (no contractual privity because there was no vested interest in the contract at the time of the allegedly preclusive lawsuit).

Privity many also exist for (1) "those who control an action although not parties to it"; (2) "those whose interests are represented by a party to the action"; or (3) for those who are "successors in interest." *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (internal quotation marks omitted). Allianz failed to establish privity under any of these enumerated factors.

First, "[t]o have control of litigation a person must have an effective choice as to the legal theories to be advanced . . . and have control over the opportunity to obtain review." *Bogenholm ex rel. Bogenholm v. House*, 388 N.W.2d 402, 406 (Minn. Ct. App. 1986). In order to have control of litigation, "[i]t is not sufficient that the person merely contributed advice in support of the party, testified as a witness or participated in consolidated pretrial proceedings." *Id.* Here, Thompson did not contribute advice, did not testify, and did not participate in any pretrial proceedings. Nor could she have. The fraudulent inducement claim was with respect to allege promises Allianz made to policy owners, not to beneficiaries. *See Mooney I*, 2007 WL 128841 at *3 (stating Plaintiffs' alleged that "Allianz deceptively used representations of an 'up-front' or 'immediate' bonus to entice individuals to purchase its two-tiered equity-index annuities"). At bottom, Thompson lacked standing to control any aspect of the *Mooney* litigation. *See Stitt v. Smith*, 113 N.W. 632, 633 (Minn. 1907) (stating if an "interest becomes vested only upon . . . death, it follows that [the death beneficiary] has no right, title, or interest which gives her standing in a court of law to assert it"). Like in *Bogenholm*, "[t]here is no evidence in the record from which [the Court] could conclude that [Thompson] had such control in the [*Mooney*] action that [she] should be bound by the outcome in that action." 388 N.W.2d at 406.

Second, in order to represent the interests of another, "[i]t is not enough that two individuals both wish to prevail in the litigation; their legal interests must be aligned to the point of being 'similarly affected by the outcome of the legal proceeding.'" *Anderson*, 849 F.3d at 778 (quoting *Rucker*, 794 N.W.2d at 120). Here, the legal interests of Warburg and Thompson were divergent. The legal interest asserted in *Mooney*, which Allianz asserts has preclusive effect, was one of fraudulent inducement with the prayer for relief requesting rescission of the allegedly fraudulent contracts. *See* (Ex. 1 at 42) (Amended Complaint in *Mooney* requesting "rescission

12

and rescissionary damages, as appropriate, to restore Plaintiffs to *status quo ante*"). Thompson, however, is asserting a legal interest premised on the enforcement of a valid contract. *See* (Compl. at 27–29). That is, the class members in *Mooney* were requesting relief that would have extinguished Thompson's right to collect the death benefit should Warburg have been restored to *status quo ante*. These interests are adverse and "where the interests . . . are adverse, no privity would exist." *Schumann v. McGinn*, 240 N.W.2d 525, 539 (Minn. 1976).

Third, "'[a] successor in interest retains the same rights as the original owner, with no change in substance.'" *Rydrych v. GK CAB Co.*, No. A11-471, 2011 WL 5829337, at *3 (Minn. Ct. App. Nov. 11, 2011) (quoting *Successor in Interest*, Black's Law Dictionary (8th ed. 2004)). Here, the plain language of the Policy specifies that the owner had more rights under the Policy than a named beneficiary. *See* (Ex. 17 at 287) (definitions of terms used in the Policy). For example, an Owner is "[t]he person(s) or non-individual entitled to the Ownership rights stated in this policy." (*Id.*). Whereas a Beneficiary is

> [t]he person(s) or entity(ies) to whom we will pay the Death Benefit under this policy. The Beneficiary is named in the application or as later changed with Notice or upon the death of a Joint Owner. In the event that a Joint Owner becomes the Beneficiary, their rights take precedence over the primary and contingent Beneficiary(ies) previously named.

(*Id.*). In addition to these definitions, the Policy specified a number of rights incident to ownership that were not held by beneficiaries. *See, e.g.*, (Ex. 17 at 293) (stating that the owner of the policy is "solely entitled to all benefits, ownership rights and privileges under this policy while in Deferral" and listing rights). Importantly, Warburg was the sole owner of the Policy and there is nothing to suggest that she requested a change of ownership (let alone that a change of ownership was effectuated). *See* (*id.* at 281–82) (showing that Warburg applied for the Policy as a sole owner with Lawrence Warburg has her sole beneficiary); (Suppl. Mem. in Opp'n at 10)

(stating Warburg never transferred an ownership interest to Thompson). As a result, no one under the Policy could have succeeded to Warburg's ownership interest and therefore Thompson was never entitled to and does not have "the same rights as [Warburg], with no change in substance." *See Rydrych*, 2011 WL 5829337, at *3 (internal quotation marks omitted). Consequently, Thompson is not a successor-in-interest to Warburg and a finding of privity cannot be supported on this basis.

Allianz's arguments with respect to the privity analysis are not persuasive. First, Allianz uses concepts to argue its position more colloquially than is intended under the law. For example, Allianz asserts that "Thompson was . . . a successor-in-interest to, and third-party beneficiary of, Warburg's annuity contract (two firmly established categories of privity under Minnesota *res judicata* law)." (Suppl. Mem. in Supp. at 2). While it is true that Thompson "succeeded" Warburg under the Policy, it was only to death benefits defined therein as a beneficiary and not the remaining ownership interests in the Policy. *See* (Ex. 17 at 287) (defining various terms including "Owner" and "Beneficiary"); (*id.* at 293) (defining rights reserved exclusively to owners). As such, as described above, because Thompson did not succeed to the same ownership rights of the Policy held by Warburg, she is not a successor-in-interest under the law. *See Rydrych*, 2011 WL 2011 WL 5829337, at *3 ("A successor in interest retains the same rights as the original owner, with no change in substance." (internal quotation marks omitted)).

Further, Allianz's assertion that Thompson was a third-party beneficiary is not persuasive. The question with respect to privity is not necessarily whether a nonparty to the contract wears the moniker of a "beneficiary," but whether the rights in the contract have vested. *See Lincoln Benefit Life Co.* 468 F. Supp. 2d at 1067 (no contractual privity because there was no vested interest). Here, for the same reasons above with respect to expectation rights, Thompson's

rights as a beneficiary were not vested during the pendency of *Mooney* by the mere assignment of Thompson as a beneficiary to the Policy. *See R & D Fin. Sols., Inc. v. W. Thrift & Loan Co.*, No. 07-cv-4306 (DSD/JJG), 2011 WL 692816, at *6 (D. Minn. Feb. 18, 2011) (Doty, J.) ("Once a third-party beneficiary's rights are vested, the contract cannot be modified without the beneficiary's consent." (citing *Morstain v. Kircher*, 250 N.W. 727, 728 (Minn. 1933))). That is, because Warburg had the authority to—and did—modify the beneficiary structure without Thompson's consent, Thompson's rights as a beneficiary of the Policy never vested (at least until Warburg passed away, well after *Mooney* was decided). *Id.* Without a vested interest, there is no privity regardless of whether Thompson was an intended beneficiary of the Policy.[7] *See Lincoln Benefit Life Co.* 468 F. Supp. 2d at 1067; *Stahel*, 249 N.W. at 714.

Second, the contracts at issue in the cases that Allianz relies upon, such as: *614 Co. v. Minneapolis Community Development Agency*, 547 N.W.2d 400 (Minn. Ct. App. 1996); *Twin City Federal Savings & Loan Association v. Radio Service Laboratories*, 64 N.W.2d 32 (Minn. 1954) (per curiam); and *In re Gwen*, No. LA CV15-02111, 2015 WL 6758126 (C.D. Cal. Nov. 5, 2015), are different than the contract here. *See, e.g.*, (Mem. in Supp. for Mot. to Dismiss at 20) (referencing cases); (Suppl. Mem. in Supp. at 9) (same). None of the cases involved revocable

---

[7]    In general, a third-party beneficiary is an intended beneficiary at the time of contract formation. *See Buchman Plumbing Co. v. Regents of the Univ. of Minn.*, 215 N.W.2d 479, 484 (Minn. 1974) ("If, by the terms of the contract, performance is directly rendered to a third party, he is intended by the promisee to be benefited."). Thompson was not an intended beneficiary at the time of original contract formation. *See* (Ex. 17 at 281–86) (listing only Lawrence Warburg as an intended beneficiary of the Policy). For the purposes of its analysis, however, the Court assumes that Warburg modified the Policy such that Thompson became an intended beneficiary. *See* (Ex. 17 at 287) (assignment of beneficiaries may only be done through written notice); *see also* (Compl. ¶ 58) (stating the changes to the beneficiary structure under the Policy). But as mentioned elsewhere, this ultimately does nothing to change the Court's analysis because those rights did not vest until 2015 at the time of Warburg's death. *See Lincoln Benefit Life Co.*, 468 F. Supp. 2d at 1067 (no privity of contract where the "policy owner retains [the] right to name new beneficiaries"); *Drewitz*, 728 N.W.2d 231 at 240 (stating *res judicata* is "limited to a claim that existed at the time the first complaint was served").

interests, and this Court is unclear as to why Allianz asserts them in support of its position. *See In re Gwen*, 2015 WL 6758126, at *6 (appellant had privity on the basis of a vested interest that arose under an agreement order and sale order issued by a bankruptcy court); *Twin City Fed. Savings & Loan Ass'n*, 64 N.W.2d at 33 (stating "United Properties, Inc., conveyed the property in question to plaintiff subject to defendant's lease"); *614 Co.*, 547 N.W.2d at 403 (stating the contract at issue was "a Contract for Private Development of Land" (internal quotation marks omitted)). As mentioned above, the law is clear: there is no privity of contract when the "policy owner retains [the] right to name new beneficiaries." *Lincoln Benefit Life Co.*, 468 F. Supp. 2d at 1067; *see also* (Suppl. Mem. in Supp. at 9) ("The general rule under life insurance and annuity contracts is that the beneficiary's rights vest when the insured or policy owner dies." (citing *McCloud*, 21 N.W.2d at 478–79)). Thus, asserting cases in which there was privity on the basis of irrevocable interests to demonstrate that the revocable interests at issue here convey privity is unpersuasive.

Third, Allianz's arguments in this respect fail to reconcile the fact that whatever interests Thompson now has under the Policy as the primary beneficiary were never defined, let alone vested, during the pendency of the *Mooney* action. *Compare* (Compl. ¶ 58) (stating Thompson was first named as a primary beneficiary of the Policy on November 25, 2009), *with Mooney III*, 2010 WL 419962 at *1 (stating the jury returned a verdict on October 12, 2009).[8] Thus regardless of the rights Thompsons had upon the death of her mother, she did not have them at

---

[8]    Thompson was named as a contingent beneficiary to the Policy on December 29, 2006. (Compl. ¶ 58). This does not change the Court's analysis. If anything, it further establishes that Thompson was not in privity with Florence Warburg at the time of the *Mooney* decision as alleged because the only interests that Thompson could acquire were the death benefits held by Lawrence Warburg as the primary beneficiary, and nothing more. *See* (Ex. 17 at 294) (stating the death benefit would be paid first to any named primary beneficiaries and then to contingent beneficiaries if no primary beneficiaries survived the owner of the Policy); *see also Drewitz*, 728 N.W.2d at 240; *Rydrych*, 2011 WL 5829337, at *3.

the time of the *Mooney* decision. There was no privity between Thompson and Warburg "at the time the first complaint was served" in *Mooney*, and Allianz's arguments to the contrary are meritless. *See Drewitz*, 728 N.W.2d at 240.

In sum, at least two prongs of the *res judicata* cannot be met: (1) *Mooney* and the instant action do not involve the same factual circumstances; and (2) Thompson was not in privity with Warburg at the time of the *Mooney* litigation. Each would be an independent basis for finding that *res judicata* does not attach to the instant action on the basis of the *Mooney* decision. *See Hauschildt*, 686 N.W.2d at 840 ("All four prongs must be met for *res judicata* to apply."). The Court recommends that Allianz's Motion to Dismiss be denied.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Allianz Life Insurance Company of North America's Motion to Dismiss [Doc. No. 18] be **DENIED**.

Dated: December 21, 2017

        *s/Steven E. Rau*
        STEVEN E. RAU
        United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).