UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Debra J. Thompson, on behalf of herself
and on behalf of all other similarly situated
persons,

Civ. No. 17-96 (PAM/TNL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Allianz Life Insurance Company of North
America,

Defendant.

---

This matter is before the Court on Plaintiff's Motion to Certify Class. For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiff Debra J. Thompson is the beneficiary of an annuity her now-deceased mother purchased from Defendant Allianz Life Insurance Company of North America. Thompson lives in California; her mother was a resident of Florida and bought the annuity in Florida. Allianz is headquartered in Minnesota.

Thompson asserts that Allianz impermissibly reduced the value of and/or the payouts from its annuities in certain circumstances, by applying what Allianz called an "Expense Recovery Adjustment" ("ERA") to the value or payouts. Thompson contends that the annuity contracts for multiple Allianz annuity products required Allianz to use the full Annuity or Accumulation Value (both abbreviated as "AV") to calculate payouts for

beneficiaries/annuitants whose annuities were in deferral for at least five years and who elected to receive payouts over a period of at least 10 years or the life of the annuitant, or for beneficiaries who received a death benefit payable over a five-year period. Because Allianz applied an ERA to the AVs, thereby ostensibly reducing payments for some beneficiaries/annuitants, Thompson argues that Allianz breached its contracts with those beneficiaries/annuitants.

Thompson gleans this requirement from two different provisions in what she contends are form contracts for annuities. First, the contracts provide, "in substance" (Pl.'s Supp. Mem. (Docket No. 137 ) at 1):

> The Annuitization [or Accumulation] Value is the amount used to calculate annuity payments if this policy has been in deferral for at least five policy years and an Annuity Option which extends over a period of at least 10 years or over the life of the annuitant is paid.

(Am. Friedman Decl. (Docket No. 139) Ex. 2 (chart of relevant language from each challenged product).) Next, the annuities provide, again "in substance":

> If the Beneficiary receives the Death Benefit as an Annuity Option over at least a five-year period, the Annuitization [or Accumulation] Value is used to calculate annuity payments.

(Id.) Thompson argues that, because these provisions do not mention that Allianz will reduce the AV by applying the ERA, Allianz was obligated to use the full AV of its products to calculate and pay annuity payments.

According to Allianz, its annuities all provide a guaranteed payment amount. Its application of the ERA is limited to situations where the AV exceeds the guaranteed payment amount. Allianz also contends that the various annuities contained many more

2

provisions about AV than the provisions to which Thompson points, and that often the same annuity product had different language regarding AV depending on the state in which it issued. These other provisions, Allianz argues, belie Thompson's claim here. Allianz contends that not only did it not breach its contracts with its annuitants and beneficiaries, but those individuals in fact all received a higher payout than those contracts promised and thus suffered no injury.

Thompson seeks to represent a class consisting of:

All Owners and Beneficiaries under the deferred annuity contracts for the Allianz products listed on Exhibit 1 for which the Annuitization Value or Accumulation Value, or the resulting annuity payment amount, has been reduced by the E[xpense] R[ecovery] A[djustment].

(Pl.'s Mot. for Class Cert. (Docket No. 88) at 1.) Exhibit 1 is a list of 46 different Allianz annuity products. Excluded from the class are members of putative class that is currently pending in California state court, <u>Sanchez v. Allianz Life Ins. Co.</u>, No. BC594715.

In her reply memorandum, Thompson concedes that the class definition should contain a limitations period. Because her claims are based on Minnesota contract law, she contends that the relevant limitations period is six years. As discussed below, however, Minnesota law cannot be constitutionally applied to all class members' claims, and thus the inclusion of a single limitations period in the class definition is inappropriate.

**DISCUSSION**

**A.    Choice of Law**

As noted, Thompson's breach-of-contract claim relies on the law of Minnesota. The Court must make "an individualized choice-of-law analysis" as to each class plaintiff's

3

claims to determine which state's law may constitutionally be applied to those claims. In re St. Jude Med., Inc., 425 F.3d 1116, 1120 (8th Cir. 2005). The Court first examines whether a conflict exists between the laws of other states in which putative plaintiffs reside and the law of Minnesota. The parties appear to agree that the laws of 49 states are potentially implicated in the nationwide class Thompson proposes.

Under Minnesota law, a claim for breach of contract requires a plaintiff to show that there was a contract, that the plaintiff performed under the contract, and that the defendant breached the contract. Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co., 848 N.W.2d 539, 543 (Minn. 2014). These elements are undoubtedly similar in all jurisdictions. Thompson contends that the only question is whether the language of the annuity contracts allowed Allianz to reduce payouts by applying the ERA, and that every state holds that this question must be determined only with reference to the four corners of the insurance contract. But Thompson's claims are not as simple as she contends, nor are the contracts at issue as uniform as she argues.

Thompson relies on an ambiguity in the annuity contracts for the crux of her claim, because none of the annuity contracts provide precisely how Allianz will calculate the Annuity Value. Thompson contends that the contracts were ambiguous in setting forth how AV and payouts would be calculated, and she asks the Court to resolve that ambiguity in her favor. Allianz has proffered evidence that, contrary to Thompson's insistence that the contracts at issue are uniform and "essentially" the same, the various annuity products in fact varied substantially from each other and even from one state to the next, and contained multiple provisions addressing the calculation of AV. Thus, although courts

4

have found class certification appropriate where the class alleges a breach of a standardized contract, this is not such a case.

State laws on construction of ambiguous contract terms differ substantially, and in ways that make the application of Minnesota law to all putative class members' claims unconstitutional. When a contract is ambiguous, a factfinder in Minnesota may look at extrinsic evidence to resolve that ambiguity. Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc., 913 N.W.2d 687, 692 (Minn. 2018). But factfinders in other jurisdictions may consider extrinsic evidence even when the contract is not ambiguous. See, e.g., Nationwide Mut. Ins. Co. v. Bushnell Landscape Indus. Inc., No. 2:14cv2305, 2016 WL 1360047, at *4 (E.D. Cal. Apr. 5, 2016) (noting California's liberal parol evidence rule); Duchardt v. Midland Nat'l Life Ins. Co., 265 F.R.D. 436, 446 (S.D. Iowa 2009) (finding class certification inappropriate "because the law of 47 states . . . vary as to their rules governing contract interpretation, especially regarding the use of extrinsic evidence in contract interpretation"). Moreover, the different statutes of limitations for breach-of-contract actions evidences the conflict between Minnesota's and other jurisdictions' laws. See Minn. Stat. § 541.31, subd. 1 (providing that "if a claim is substantively based . . . upon the law of one other state, the limitation period of that state applies"). A potentially outcome-determinative conflict exists, making application of Minnesota law problematic.

Because there are potential conflicts between Minnesota law and the law of other jurisdictions, the Court must determine whether application of Minnesota law nevertheless comports with due process. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or

5

significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981). Thompson argues that a Minnesota corporate defendant cannot "claim surprise by the application of Minnesota law to conduct emanating from Minnesota." Mooney v. Allianz Life Ins. Co. of N. Am., 244 F.R.D. 531, 535 (D. Minn. 2007) (Montgomery, J.). Allianz points out that its annuities are subject to approval by state insurance regulators, and the contracts vary from state to state as a result, making the application of a single state's contract law to those annuities constitutionally impermissible.

Although this determination presents a close question, the Court concludes that Minnesota law cannot be constitutionally applied to all members of the putative class. Indeed, it may be that Thompson herself cannot invoke Minnesota law. Her mother was a Florida resident and entered into the annuity contract in Florida. Florida follows the rule that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue" under an insurance contract. State Farm Mut. Auto. Ins. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006). The place where the contract was fully executed "is generally the state where the insured executed the insurance application." Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1059 (11th Cir. 2007). For Thompson, that state would be Florida.

Thompson has failed to fully analyze the law of the 49 different jurisdictions whose laws may apply to the putative class's claims here. And that burden is hers alone—Allianz has no burden to establish that the laws are different. To the extent that there are similarities among the laws that might allow for various subclasses, Thompson has utterly failed to

make that argument. And the time for her to make any additional argument on class certification has passed.

Because the application of Minnesota law to the entire class is not constitutionally permissible, the Court cannot find that common issues predominate over individual issues under Rule 23(b)(3). Class certification is therefore inappropriate. Even if, however, application of Minnesota law was constitutional, class certification is inappropriate under the requirements of Rule 23, discussed in more detail below.

**B.     Class Certification**

A plaintiff seeking to certify a class must initially establish that: (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If Rule 23(a)'s threshold criteria are met, the plaintiff must then show that the action is maintainable under one of the subsections of Rule 23(b). In this case, Thompson seeks certification of a Rule 23(b)(3) class, which requires that: (1) questions of law or fact common to the members of the class predominate over any questions affecting individual members; and (2) a class action is the superior method of adjudicating the controversy.

Although the Court does not consider the merits of a plaintiff's substantive claims in assessing a motion for class certification, Thompson bears the burden of establishing each prerequisite element to certification. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). In rigorously analyzing whether Thompson has met her burden, the Court "may

look past the pleadings . . . [to] understand the claims, defenses, relevant facts, and applicable substantive law. . ." Thompson v. Am. Tobacco Co., Inc., 189 F.R.D. 544, 549 (D. Minn. 1999) (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)); Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (noting that analysis of a class certification motion "generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action") (quotation omitted). Ultimately, because of the fact-specific quality of the analysis, the Court exercises broad discretion in determining whether or not to certify a particular class under Rule 23. See Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979); Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994).

Allianz challenges only commonality, predominance, and superiority, and also argues that Thompson is an inadequate class representative. The Court will therefore discuss only those issues.

**1.    Rule 23(a)**

   a.    <u>Commonality</u>

Rule 23 does not require that all questions of law and fact be common to every member of the proposed class. Rather, the Rule requires only that common questions exist. The presence of differing legal inquiries and factual discrepancies will not preclude class certification under this prong. Dirks v. Clayton Brokerage Co. of St. Louis, Inc., 105 F.R.D. 125, 131 (D. Minn. 1985) (MacLaughlin, J.).

Here, there are common questions in all class members' claims: did the contracts allow Allianz to apply the ERA to reduce the AV or the resultant payouts? Whether that

8

common question predominates is a different issue, but for purposes of Rule 23(a), Thompson has established commonality.

      b.    <u>Adequacy</u>

Thompson must demonstrate that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To do so, she must show that: (1) her counsel is competent to pursue the action; and (2) her interests are not antagonistic to the interests of the class. <u>In re Workers' Compensation</u>, 130 F.R.D. 99, 107 (D. Minn. 1990) (Rosenbaum, J.). Allianz challenges Thompson's adequacy, contending that she does not understand the litigation and in fact in her mind her complaint is that Allianz marketed an annuity product to her elderly mother, not that Allianz ostensibly reduced the benefit payout.

The class representatives "need not have, and often . . . will not have, personal knowledge of the facts needed to make out a prima facie case." <u>Gentry v. C & D Oil Co.</u>, 102 F.R.D. 490, 495 (W.D. Ark. 1984). Indeed, "the depth of a named representative's knowledge is irrelevant." <u>In re Workers' Compensation</u>, 130 F.R.D. at 108. Thompson is willing to prosecute this action on behalf of the class, her interests are not antagonistic to those of the class, and she is an adequate class representative. Thompson has established the threshold Rule 23(a) criteria.

    **2.**    **Rule 23(b)**

Next, the Court must consider whether this action meets the requirements of one of the subsections of Rule 23(b). <u>See</u> <u>Eisen v. Carlyle & Jacquelin</u>, 417 U.S. 156, 163 (1974)

(noting that class actions must meet requirements of both Rule 23(a) and Rule 23(b)). Thompson seeks the certification of a class under subsection (b)(3).

Before certifying a class under Rule 23(b)(3), a district court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Predominance

> The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). Certification is appropriate if "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:49, at 195–96 (5th ed. 2012)). A class may be certified based on common issues "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id. (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005)).

Stuart v. State Farm Fire & Cas. Co., 910 F.3d 371, 374-75 (8th Cir. 2018).

Thompson argues that many decisions apply a single state's law to a class such as this. These decisions include one from this District determining that the Minnesota Prevention of Consumer Fraud Act applied to Allianz in a nationwide class action challenging sales practices for certain annuities. Mooney v. Allianz Life Ins. Co. of N. Am., 244 F.R.D. 531 (D. Minn. 2007) (Montgomery, J.).

But the facts of Mooney render that case inapposite. As noted, Mooney involved claims under Minnesota's Consumer Fraud Act, a statute that the Minnesota legislature

10

intended to apply to Minnesota companies like Allianz. See CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 93 (1987) (noting that a state "has a substantial interest in preventing the corporate form from becoming a shield for unfair business dealing"). There is no such substantial interest regarding breach-of-contract claims. The Mooney class's claims emanated from Allianz's marketing materials, which were created in and distributed from Minnesota. While the insurance contracts at issue here were partially executed in Minnesota, the connection with each insured's state of residence is at least as strong. And, as discussed above, some states' laws require that the law of the place where the insured executed the contract be applied.

This case is more similar to Rapp v. Green Tree Servicing, LLC, 302 F.R.D. 505 (D. Minn. 2014) (Schiltz, J.). In Rapp, the putative class raised breach-of-contract claims against a mortgage insurer, alleging that the insurer charged more than the actual cost of insurance in breach of the mortgage contracts. While the decision noted that the presence of contract claims invoking the laws of all 50 states did not necessarily preclude class certification, "differences in state law will compound the disparities among class members from the different states." Id. at 509 (quotation omitted). The court ultimately determined that, because the claims would likely require extrinsic evidence to resolve the meaning of the challenged contract term, the state-by-state differences meant that there was no predominance. See id. at 510 (noting that "the laws of the 50 states vary as to the admissibility of extrinsic evidence—sometimes drastically so"). "Figuring out the laws of each of the 50 states with respect to the admissibility of extrinsic evidence would be

difficult enough; fashioning a plan for applying those laws on a class basis would be nearly impossible." Id.

In addition, as the Rapp decision discussed, differences among statutes of limitations—both in the length and when the limitations period begins to run—made a nationwide breach-of-contract class unworkable. Id. at 511. The Rapp court concluded that "individual questions would overwhelm common questions" and declined to certify the breach-of-contract class. Id. at 513.

The same result is appropriate here. The Court has concluded that Minnesota law cannot be constitutionally applied to all of the claims at issue. And even if some putative plaintiffs could constitutionally invoke Minnesota law, that would be only the first step of individualized inquiries. The class raises breach-of-contract claims under the laws of multiple states, and each state's laws regarding extrinsic evidence and limitations are different. These individual differences simply overwhelm any common questions, and Thompson has failed to satisfy predominance.

The failure to satisfy either of Rule 23(b)'s elements mean a class cannot be certified, and the Court will therefore not address the superiority prong of the Rule 23(b) analysis.

**CONCLUSION**

Thompson has failed to establish that common questions predominate over individual issues in her proposed class. Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion to Certify Class (Docket No. 88) is **DENIED**.

Dated: <u>January 28, 2019</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge